UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:   Kathryn Ramona Esquibel,                                    Case No. 17-10498-j7

Debtor.

NOTICE OF SETTLEMENT AGREEMENT DATED MARCH 27, 2019

Attached hereto is a copy of a fully executed Settlement Agreement dated March 27, 2019. As of this date, the Settlement Agreement is subject to approval of the Court.

**BY THE COURT**
Lana Merewether
Clerk of Court

Dated: March 28, 2018

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:

KATHRYN RAMONA ESQUIBEL,

Debtor.

Case No. 17-10498-j7
Chapter 7

YVETTE J. GONZALES, Chapter 7 Trustee
of the Bankruptcy Estate of Kathryn Ramona
Esquibel,

    Plaintiff,

v.

Adv. Proc. 17-01042-j

JOHN SEXTON and DAVID KELLY,

    Defendants.

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

### RECITALS

WHEREAS, the Court had set for March 27, 2019, (i) a trial on the merits in the above-captioned adversary proceeding, and (ii) a final hearing on David Kelly's objection to Martin Lopez III, P.C.'s ("Lopez's") claim filed in the above-captioned bankruptcy case (together, the "Disputes");

WHEREAS, on March 27, 2019, the Chapter 7 Trustee of the above-captioned estate Yvette Gonzales (the "Trustee"), John Sexton ("Sexton"), David Alton Kelly ("Kelly"), Kathryn Ramona Esquibel ("Esquibel"), and Lopez, through Martin Lopez III (collectively, the "Parties") engaged in discussions and negotiations in order to attempt to resolve the Disputes;

WHEREAS, the Parties have reached an agreement to settle the Disputes; and

WHEREAS the parties desire to settle the Disputes, as specified below, and have agreed to execute this Agreement for such purpose and to extinguish the claims and obligations set forth below.

## AGREEMENT

NOW, THEREFORE, IT IS AGREED BETWEEN THE PARTIES AS FOLLOWS:

1. The forgoing recitals are incorporated herein by this reference as if fully restated.

2. Within fifteen (15) days of Court approval of this settlement agreement, Kelly shall execute and deliver to the Trustee a quitclaim deed for the real property he obtained from Sexton, which was conveyed to Sexton by Esquibel, and located at 252 S. 6th Street, Santa Rosa, New Mexico, and 260 S. 6th Street, Santa Rosa, New Mexico (the "Property"). The Trustee shall have the authority, but not the obligation, to record the quitclaim deed in the real property records of Guadalupe County. Kelly, Sexton, and Esquibel agree not to sell, encumber, or transfer the Property without the express written consent of the Trustee and agree the Trustee may file a Notice of Interest in the real property records of Guadalupe County should she desire to do so.

3. Within seven (7) days of delivery of Kelly delivering the quitclaim deed to the Trustee, the Trustee agrees to dismiss the above-captioned adversary proceeding with prejudice, and each party shall be responsible for their own costs and attorneys' fees.

4. Kelly shall have a one (1) year exclusive right to purchase the Property from the Trustee for the lesser of (i) 75% of the Appraised Value (as defined herein) of the Property, or (ii) $85,000.00, payable in cash at closing. In the event the purchase price of the Property is 75% of the Appraised Value of the Property, Kelly agrees to pay all closing costs in connection with the sale. In the event the purchase price of the Property is $85,000.00, the Trustee and Kelly agree to equally divide all closing costs in connection with the sale. The Trustee and Kelly agree that if the Trustee consummates the sale of the Property to Kelly, the sale will be as is, where is, with all faults, and the Trustee will not be making any warranties, express or implied, with respect to the Property and if execution of a deed is necessary, the Trustee will convey the Property by Trustee's deed or special warranty deed. The Trustee and Kelly further agree that no brokers or real estate agents shall be involved in the transaction. The one year period for Kelly's exclusive right to purchase the Property from the Trustee shall begin on the earlier of the effective date of an appraisal obtained by either the Trustee or Kelly. For purposes of illustration only, if the Appraised Value of the Property was determined to be $50,000.00, Kelly would have the right to purchase the Property from the Trustee for $37,500.00, and Kelly shall pay all closing costs associated with the transaction. As an additional example, if the Appraised Value of the Property was determined to be $200,000, Kelly shall be entitled to purchase the Property from the Trustee for $85,000.00, and the parties would equally divide the closing costs.

5. Kelly shall also have an exclusive right to rent the Property from the present date through, and until, the one year anniversary of the effective date of the first appraisal obtained by either the Trustee or Kelly (the "Rental Term"). The Trustee agrees that Kelly may sublet a portion of the Property to Esquibel. Rent shall be $500.00 per month and shall be due on the 1st of each month, beginning on the first full month after Court approval of this settlement agreement between the Parties. For example, if the Court were to approve this settlement on April 25, 2019, rent shall be due and owing on May 1, 2019. Kelly and the Trustee further agree to enter into a residential lease between the Trustee and Kelly substantially in the form of a Realtors Association of New

Mexico Residential Lease Agreement to further document the terms and conditions of the tenancy between the parties.

6.    The Trustee shall have the right, but not the obligation, to obtain her own appraisal on the Property. In the event the Trustee obtains her own appraisal, she shall be responsible for all costs and fees associated with the appraisal. Kelly intends to obtain an appraisal on the Property in connection with his efforts to finance the Property. Mr. Kelly shall be responsible for all costs and fees associated with his own appraisal and financing of the Property. In the event both the Trustee and Kelly obtain appraisals on the Property, and in the event the appraised values are different and Kelly intends to proceed with purchasing the Property from the Trustee, the parties agree to accept the average of the appraised values to determine the amount Kelly is obligated to pay the Trustee to purchase the Property (if one appraisal, or the average of two appraisals, the "Appraised Value").

7.    In the event Kelly does not close on the purchase of the Property during his one year exclusive right to purchase the Property from the Trustee, Kelly and Esquibel agree to vacate the Property on or before the expiration of the one year exclusive period, and agree that the Court may enter an order, without notice or opportunity to be heard, requiring Kelly and Esquibel to vacate the Property and deliver possession to the Trustee upon filing of an affidavit by the Trustee or her counsel requesting the same.

8.    Kelly agrees to (i) pay all outstanding ad valorem taxes on the Property in a timely manner and when due and owing, (ii) pay or reimburse the Trustee for all ad valorem taxes on the Property for the period of time in which he occupies the Property, whether due and owing or not, (iii) maintain property and casualty insurance on the Property with a replacement value of no less than $85,000.00, and maintain general lability insurance in an amount of no less than $100,000, (iv) name the Trustee as a loss payee on the property and casualty insurance policy for the Property and provide proof of such insurance to the Trustee in a timely manner upon request, (v) pay all utilities associated with the Property during the Rental Term and (vi) pay any costs or expenses associated with maintaining the Property in its current condition.

9.    Kelly agrees to withdraw with prejudice his objection to Lopez's claim filed in the bankruptcy case, Claim No. 8-1. Mr. Sexton and Ms. Esquibel each agree not to file any further objections to Lopez's claim. As part of this settlement, the Parties agree that the Trustee shall seek final allowance of Lopez's claim, Claim No 8-1, in the Bankruptcy Case.

10.    Kelly agrees to withdraw the claims he has purchased and/or was transferred in the bankruptcy case, which are Claim Nos. 5, 6, 7.

11.    The Parties agree that Kelly and/or Esquibel reserve their right to pay any unpaid amounts to holders of allowed claims in the Bankruptcy Case should the Trustee's distribution not pay all claims in full. In the event Kelly and/or Esquibel fail and/or refuse to pay the unpaid amounts to holders of allowed claims in the Bankruptcy Case, Esquibel agrees to waive entry of her discharge.

12. The Parties agree Esquibel may amend her schedules to list any and all claims she believes she may have against Lopez, but that such claims are being fully and completely released by the parties.

13. Esquibel agrees that if the Trustee's distribution from the bankruptcy estate does not fully satisfy Lopez's claim in the amount of $24,065.54, she agrees to pay the difference between the face amount of the claim of $24,065.54 and the distribution received by Lopez from the bankruptcy estate. Upon receipt of payment of Lopez's entire claim, Lopez agrees to dismiss the adversary proceeding in which he is seeking to deny the debtor's discharge, Adv. Proc. 17-01045J.

14. Lopez agrees to accept $24,065.54 as payment in full for any and all amounts owed by Ms. Esquibel, whether such amount is paid by the Trustee as a distribution from the estate, or by a combination of a distribution from the estate and Kelly and/or Esquibel paying the difference between the face amount of the claim and the distribution Lopez receives from the bankruptcy estate.

15. Effective upon Court approval of this Agreement, and except as set forth herein and the obligations contained herein, the Trustee, on her behalf and on behalf of Esquibel's bankruptcy estate, and Lopez hereby voluntarily and knowingly release and forever discharge Kelly, Esquibel, and Sexton, and their immediate family, agents, officers, directors, employees, attorneys, employers, beneficiaries, recipients, transferees, distributees, or beneficiaries, and all of his respective successors, and assigns from any and all claims, demands, causes of action, costs, expenses, and requests for attorneys' fees, whether known or unknown, asserted or unasserted, with respect to any and all claims of any kind which the Trustee or the Esquibel bankruptcy estate may have against them as of the date hereof, including but not limited to any claims that Trustee or Lopez has or could have made in the any adversary proceeding or state court proceeding.

16. Effective upon Court approval of this Agreement, Kelly, Sexton, and Esquibel voluntarily and knowingly release and forever discharge the Trustee and Lopez, and all of the Trustee's and Lopez' agents, officers, directors, employees, attorneys, successors, and assigns, from any and all claims, demands, actions, costs, expenses, and attorney fees that they may have against the Trustee or Lopez, whether known or unknown, asserted or unasserted.

17. The Parties shall each bear their respective costs and attorneys' fees incurred in connection with this settlement.

18. The Parties acknowledge that this Agreement is contingent upon Bankruptcy Court approval.

19. Upon Bankruptcy Court approval, this Agreement will bind and inure to the benefit of the Trustee, Kelly, Esquibel, Lopez, Sexton, and any other person or entity claiming successor status through any party to this Agreement, including any successor bankruptcy trustee appointed in the Esquibel's Bankruptcy Case, whether appointed under Chapter 7 or any other chapter of the Bankruptcy Code.

Settlement Agreement
March 27, 2019

20. The Parties warrant and represent to the other that no promise, inducement, or agreement not expressed herein has been offered, made, or relied on, and that this Agreement contains the entire agreement between the parties.

21. This Agreement is entered into under the laws of the State of New Mexico. Any dispute concerning this Agreement shall be brought before the United States Bankruptcy Court for the District of New Mexico.

22. The parties agree that the United States Bankruptcy Court for the District of New Mexico shall have the power to enforce this Agreement.

23. In the event of litigation to enforce this agreement, the parties agree to consent to the United States Bankruptcy Court for the District of New Mexico hearing and determining all claims and issues arising therefrom, including entering final orders and judgments on all claims, including money judgments as appropriate.

24. This Agreement may be executed in several counterparts and by facsimile or electronic transmission, each of which shall be fully effective as an original and all of which together shall constitute one and the same instrument.

25. This Agreement has been negotiated and prepared by the parties and their respective counsel, and should any provision of this Agreement require judicial interpretation, the court interpreting or construing the provision shall not apply the rule of construction that a document is to be construed more strictly against one party.

26. The Parties agree that this is a settlement of disputes claims and that no party is acknowledging any liability or wrong doing.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

Martin Lopez III, P.C.

By: _____
Martin Lopez, III, President

_____
Kathryn Ramona Esquibel

_____
David Alton Kelly

Settlement Agreement
March 27, 2019

_____
John Sexton

_____
Yvette J. Gonzales, Chapter 7 Trustee

_____
Edward A. Mazel, counsel for Yvette J. Gonzales

_____
Michael K. Daniels, counsel for Martin Lopez, III, P.C.

_____
Wesley O Pool, counsel for Kathryn Ramona Esquibel

Settlement Agreement
March 27, 2019

_____
John Sexton

_____
Yvette J. Gonzales, Chapter 7 Trustee

_____
Edward A. Mazel, counsel for Yvette J. Gonzales

_____
Michael K. Daniels, counsel for Martin Lopez, III, P.C.

/s/ Wesley O Pool
_____
Wesley O Pool, counsel for Kathryn Ramona Esquibel